IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEREK JONATHON SHEAFFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-852 |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| *Acting Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

AND NOW, this 22nd day of August, 2023, upon consideration of Defendant's Motion

for Summary Judgment (Doc. No. 14) filed in the above-captioned matter on August 26, 2022,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No.

12) filed in the above-captioned matter on July 28, 2022,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN

PART.  Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the

Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and

denied in all other respects.  Accordingly, this matter is hereby remanded to the Commissioner

for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I.    **Background**

Plaintiff Derek Jonathon Sheaffer protectively filed a claim for Supplemental Security

Income benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 *et seq.*,

---

[1]     Kilolo Kijakazi is substituted as the defendant in this matter, replacing former
Commissioner Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. §
405(g).  The Clerk is directed to amend the docket to reflect this change.

effective April 15, 2019, claiming that he became disabled on that date due to bi-polar condition,

ADHD , back pain, and kidney stones.  (R. 15, 183-88, 209).  After being denied initially on July

1, 2019, and upon reconsideration on August 22, 2019, Plaintiff sought a hearing before an

Administrative Law Judge ("ALJ").  (R. 15, 111-15, 119-22, 123).  An initial hearing was held

on March 11, 2020, but was continued to allow Plaintiff to seek representation.  (R. 32-38).

After Plaintiff obtained counsel, a telephonic hearing was held on July 29, 2020.  (R. 39-81).  In

a decision dated September 29, 2020, the ALJ denied Plaintiff's request for benefits.  (R. 15-26).

The Appeals Council declined to review the ALJ's decision on April 27, 2021.  (R. 1-3).

Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for

summary judgment.

## II.      Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of

the record, and the scope of that review is limited to determining whether the Commissioner

applied the correct legal standards and whether the record, as a whole, contains substantial

evidence to support the Commissioner's findings of fact.  *See* 42 U.S.C. § 405(g); *Matthews v.*

*Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive'"

(quoting § 405(g)); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)

(stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of

fact to determine whether they are supported by substantial evidence).  If the district court finds

this to be so, it must uphold the Commissioner's final decision.  *See Rutherford v. Barnhart*, 399

F.3d 546, 552 (3d Cir. 2005).  The Court may not set aside a decision that is supported by

substantial evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft*

*v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806
F.2d 1185, 1190-91 (3d Cir. 1986)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186
F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). It
means "such relevant evidence as a reasonable mind might accept as adequate to support a
conclusion." *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). However, a "'single piece
of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to
resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d
Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence
substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g.,
that offered by treating physicians) – or if it really constitutes not evidence but mere
conclusion.'" *Id.* So as to facilitate the district court's review, an ALJ's findings must "be
accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter
v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or
indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence.
*See id.* at 705-06. Moreover, the Court must ensure the ALJ did not "reject evidence for no
reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir.
1980)).

A disability is established when the claimant can demonstrate some medically
determinable basis for an impairment that prevents him or her from engaging in any substantial
gainful activity for a statutory twelve-month period. *See Fargnoli v. Massanari*, 247 F.3d 34,
38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful
activity 'only if his physical or mental impairment or impairments are of such severity that he is
not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national

economy . . . .'" *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step

sequential evaluation process in guiding ALJs in determining whether a claimant is under a

disability as defined by the Act. *See* 20 C.F.R. § 416.920. At Step One, the ALJ must determine

whether the claimant is currently engaging in substantial gainful activity. *See id.* at

§ 416.920(a)(4)(i). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S.

137, 140 (1987). If not, the second step of the process is to determine whether the claimant is

suffering from a severe impairment. *See* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment or

combination of impairments is not severe if it does not significantly limit [the claimant's]

physical or mental ability to do basic work activities." *Id.* at § 416.922. If the claimant fails to

show that his or her impairments are "severe," he or she is ineligible for disability benefits. If

the claimant does have a severe impairment, however, the ALJ must proceed to Step Three and

determine whether the claimant's impairment meets or equals the criteria for a listed impairment.

*See id.* at § 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is

automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps

Four and Five.

In considering these steps, the ALJ must formulate the claimant's residual functional

capacity ("RFC"). A claimant's RFC is defined as the most that an individual is still able to do

despite the limitations caused by his or her impairments. *See Fargnoli*, 247 F.3d at 40; 20 C.F.R.

§ 416.945(a). At Step Four, it is the claimant's burden of demonstrating an inability to perform

his or her past relevant work. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the ALJ

determines that the claimant lacks the RFC to resume his or her former occupation, the

evaluation then moves to the fifth and final step.  *See* 20 C.F.R. § 416.920(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate

that the claimant is capable of performing other available work in the national economy in order

to deny a claim of disability.  *See id.* at § 416.920(a)(4)(v).  In making this determination, the

ALJ must consider the claimant's RFC, age, education, and past work experience.  *See id.*  The

ALJ must further analyze the cumulative effect of all the claimant's impairments in determining

whether he or she is capable of performing work and is not disabled.  *See id.* at § 416.923.

### III.     The ALJ's Decision

In her September 29, 2020 decision, the ALJ found that Plaintiff had not been engaged in

substantial gainful activity since the application date of April 15, 2019.  (R. 17).  The ALJ also

found that Plaintiff met the second requirement of the process insofar as he had several severe

impairments, including migraines, cervicalgia, sciatica, lumbar strain, obesity, and attention

deficit disorder.  (*Id.*).  She found, however, that Plaintiff's history of kidney stones did not

constitute a severe impairment.  (R. 18).  The ALJ concluded that none of Plaintiff's impairments

met any of the listings that would satisfy Step Three.  (R. 18-20).

The ALJ found that Plaintiff retained the RFC to perform light work, as defined in 20

C.F.R. § 404.1567(b), with the following exceptions:

- He could stand and/or walk for four hours during an eight-hour workday.
- He could frequently balance and occasionally stoop, crouch, kneel, or crawl.
- He should avoid greater than occasional exposure to extreme coldness.
- He could tolerate no more than moderate noise levels.
- He should avoid all workplace hazards such as moving machinery or unprotected heights.
- He could perform simple routine tasks and make simple work-related decisions.
- He could not work in a fast-paced production environment.
- He could tolerate occasional contact with supervisors, coworkers, and the general public.

      -    He should have few changes to his work processes and setting.

(R. 20-25).  At Step Four of the process, the ALJ found that Plaintiff had no past relevant work.

(R. 25).  She proceeded to determine, at Step Five, whether there were jobs in the national

economy that Plaintiff could perform.  (R. 22-26).  A vocational expert ("VE") testified that,

based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform a

significant number of jobs in the national economy, including the representative occupations of

marker, routing clerk, and mail sorter.  (R. 26, 74).  The VE further testified that Plaintiff could

not perform the jobs of routing clerk or mail sorter if found to read at a fourth-grade level and

perform math at a fifth-grade level (R. 78-79), but this testimony was not discussed by the ALJ.

Ultimately, the ALJ found that Plaintiff was not disabled.  (R. 26).

## IV.    Legal Analysis

Plaintiff raises a number of arguments as to why the ALJ's finding that he was not

disabled was not supported by substantial evidence.  The Court does not find merit in all of these

arguments but does agree that remand is warranted because the ALJ failed to discuss a material

piece of record evidence.  Accordingly, the Court will remand for further consideration and

discussion of this issue.[2]

At the second administrative hearing in this matter, Plaintiff's counsel directly asked the

VE whether a claimant with a fourth-grade reading level and fifth-grade math level could still

perform the jobs that the VE had found available to one with Plaintiff's RFC.  As mentioned

above, the VE testified that a person with such reading and math levels could not perform two of

the three jobs – specifically the routing clerk and mail sorter positions.  (R. 78-79).  In her

closing statement at the hearing, Plaintiff's counsel, referencing Exhibit 9F, explained that

---

[2]     Because the Court is remanding on this issue, it does not reach Plaintiff's other
arguments.  These issues should be considered to the extent relevant on remand.

Plaintiff had gone to Butler County Community College for reading and math testing at her behest and had tested at a fourth-grade level in reading and a fifth-grade level in math.  She noted that the VE had testified that a person with such levels could not perform the jobs discussed above.  (R. 79-80).  And indeed, the record contains an Exhibit 9F, which contains the results discussed at the hearing from reading and math testing performed on July 16, 2020.  (R. 590-92).

Given that the VE expressly testified that these reading and math scores would eliminate most of the jobs which she offered as representative occupations in response to the ALJ's hypothetical, this evidence was clearly relevant.  Counsel even highlighted this point in her closing statement to the ALJ.  Despite all this, the ALJ did not address or discuss Exhibit 9F or Plaintiff's reading and math levels in her decision at all.  Instead, she appears to have discounted the VE's testimony regarding the impact of the test results and found that Plaintiff could perform the jobs of marker, routing clerk, and mail sorter.  However, she did so without making any findings as to the validity or relevance of the July 16 test results.  It is axiomatic that, in making her findings, an ALJ must consider all of the evidence and "give some indication of the evidence which [she] rejects and [her] reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Plummer*, 186 F.3d at 429).  "'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Id.* (quoting *Cotter,* 642 F.2d at 705).  The Court finds itself in this position here.

The Commissioner suggests that any error in failing to discuss the July 16 test results was harmless because even if this evidence was credited and included in the RFC, Plaintiff could still

perform the job of marker.[3]  It is true that the Commissioner may satisfy her burden to

demonstrate that a claimant can perform jobs existing in the national economy at the fifth step of

the analysis if the ALJ identifies at least one occupation with a significant number of jobs in the

national economy that the claimant can perform.  *See Wilkinson v. Comm'r of Soc. Sec.*, 558 Fed.

Appx. 254, 256 (3d Cir. 2014) (citing 20 C.F.R. § 416.966(b)).  However, although the VE did

not testify that the marker job would be eliminated, she also did not discuss what, if any, erosion

of the occupational base would occur assuming Plaintiff's purported math and reading levels.

Given that the other two positions upon which the ALJ relied at Step Five were eliminated

completely, a more focused discussion as to any impact on the marker position is needed.

Moreover, although the VE's testimony about the test scores' impact on the ability to do

certain jobs is what spotlighted the relevance of those scores, the scores could well be relevant in

other ways as well.  For instance, the ALJ did not consider whether Plaintiff had any intellectual

impairment at Step Two other than ADHD.  Perhaps Plaintiff's reading and math scores, if

credited, would call for consideration of additional impairments, particularly in light of evidence

that Plaintiff dropped out of school after attempting eighth grade three times (R. 51-52) and the

ALJ's own finding that Plaintiff had a limited education. (R. 25).  Likewise, in both her Step

Three and RFC findings, the ALJ cited evidence that Plaintiff's fund of knowledge was within

normal limits and that he was estimated to be of average intelligence.  (R. 19, 22).  The July 16

test results at least warrant discussion in light of these findings, as they at least arguably

contradict these findings.  This evidence, thus, could be relevant beyond merely the

---

[3]      The Commissioner also argues that the document containing the test results is unsigned
and that it does not constitute a medical opinion pursuant to the SSA's regulations.  However,
opinion evidence is only one type of evidence, *see* 20 C.F.R. § 404.1513(a); the test results were
admitted as evidence and clearly needed to be discussed as evidence, whether the report of those
results constituted an opinion or not.  Further, it should go without saying that an exhibit need
not be signed to be considered as evidence.

qualifications to perform the jobs of routing clerk and mail sorter; it could impact a number of

findings in the ALJ's decision.

By no means is the Court suggesting that Exhibit 9F necessitates any specific finding as

to Plaintiff's impairments, whether these impairments meet a listing, or Plaintiff's RFC.  The

Court likewise does not suggest that the ALJ is obligated to accept these scores or to add any

specific limitations to the RFC to account for them.  But without some discussion of the test

scores, the Court simply cannot determine how the evidence was factored into the ALJ's

decision.[4]

**V.      Conclusion**

In short, the record does not permit the Court to determine whether the ALJ's decision is

supported by substantial evidence, and, accordingly, the Court finds that substantial evidence

does not support the ALJ's decision in this case.  The Court hereby remands the case to the

Commissioner for reconsideration consistent with this Order.


s/Alan N. Bloch
United States District Judge



ecf:          Counsel of record

---

[4]       Because it is the need for additional explanation by the ALJ that necessitates a remand in this case, the record does not permit the Court to reverse and remand the case for an award of benefits. *See Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).  Indeed, the Court emphasizes that it is not in any way finding that the ALJ's findings are incapable of being found to have adequate record support.